# Dennis J. Anziano *v.* Board of Police Commissioners of the Town of Madison et al.
### (14893)

Peters, C. J., Callahan, Borden, Berdon and Palmer, Js.

Argued May 5—decision released June 21, 1994

*M. Hatcher Norris,* for the appellant (plaintiff).

*Floyd J. Dugas,* with whom, on the brief, was *John J. Kelly,* for the appellees (defendants).

PETERS, C. J. In this administrative appeal, the principal issue is whether the dismissal of a police chief by a board of police commissioners comported with the requirements of procedural due process. The plaintiff, Dennis J. Anziano, formerly the chief of police for the town of Madison, appealed to the trial court to set aside his dismissal by the defendants, the board of police commissioners of the town of Madison and the individual members of the board (board). After reviewing the administrative record and the briefs of the parties, and hearing oral argument, the trial court concluded that the board's dismissal of the plaintiff should be sustained and, accordingly, rendered a judgment dismissing the plaintiff's appeal. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The trial court's memorandum of decision recites the history of this litigation. In August, 1991, the board received information relating to potentially illegal activities by the plaintiff. The board retained the National Detective Agency to undertake an investigation. On the basis of two reports by the agency, one dated October 3, 1991, and the other dated December 11, 1991, the board directed the preparation of formal charges against the plaintiff. The plaintiff received copies of both reports.

The board adopted a draft of proposed charges against the plaintiff at a special meeting on March 16, 1992. At that meeting, which the plaintiff attended with counsel, he received a copy of the charges. In accord-

ance with General Statutes § 7-278,[1] the board's written notice of charges advised the plaintiff of his right to a public hearing, of his right to be heard, and of his right to counsel.

The board informed the plaintiff that hearings would begin on March 25, 1992. Such hearings were held on twenty-two occasions from that date until July 22, 1992. At the hearings, the board's prosecuting counsel presented evidence consisting of numerous witnesses and exhibits. The plaintiff and his counsel were present throughout and had the opportunity to cross-examine all witnesses and to present evidence on the plaintiff's behalf.

The board deliberated and voted on the charges in a public session held on July 22, 1992. The board found that the factual allegations contained in charges one, two, four, seven and eight had been proven by clear and convincing evidence, and that just cause for dis-

---

[1] General Statutes § 7-278 provides: "HEARING PRIOR TO DISMISSAL OF MUNICIPAL POLICE HEAD. JUST CAUSE REQUIREMENT. APPEAL. No active head of any police department of any town, city or borough shall be dismissed unless there is a showing of just cause by the authority having the power of dismissal and such person has been given notice in writing of the specific grounds for such dismissal and an opportunity to be heard in his own defense, personally or by counsel, at a public hearing before such authority. Such public hearing, unless otherwise specified by charter, shall be held not less than five nor more than ten days after such notice. Any person so dismissed may appeal within thirty days following such dismissal to the superior court for the judicial district in which such town, city or borough is located. Service shall be made as in civil process. Said court shall review the record of such hearing, and, if it appears upon the hearing upon the appeal that testimony is necessary for an equitable disposition of the appeal, it may take evidence or appoint a referee or a committee to take such evidence as it directs and report the same to the court with his or its findings of fact, which report shall constitute a part of the proceedings upon which the determination of the court shall be made. The court, upon such appeal, and after a hearing thereon, may affirm the action of such authority, or may set the same aside if it finds that such authority acted illegally or arbitrarily, or in the abuse of its discretion, with bad faith, malice, or without just cause."

missal had been proven for each of these charges.[2] The board then, by a vote of four to one, dismissed the plaintiff on that date.

In his appeal to the trial court, the plaintiff claimed that the board's proceedings violated his constitutional and statutory rights. The court considered and rejected each of the plaintiff's claims, concluding that "[t]he decision by the Board was fully supported by the evidence, and the Board did not act illegally, arbitrarily, in abuse of its discretion, or with bad faith or malice. The Board had just cause based on the record to dismiss [the plaintiff] from his position of Chief of Police of Madison in accordance with the provisions of § 7-278." Accordingly, the trial court dismissed the plaintiff's appeal. This appeal followed.

In this court, the plaintiff contends that the judgment of the trial court should be reversed for three principal reasons. He maintains that the court should have set his dismissal aside because the board: (1) violated his constitutional rights because the board's combination of investigative and adjudicative functions, although authorized by § 7-278, created an unconstitutional risk of prejudice in the circumstances of his case; (2) improperly exercised its adjudicative function by requiring him to prove his defenses, by disregarding the terms of his

---

[2] The charges that the board found to have been proven, by clear and convincing evidence, were that, on specified dates, the plaintiff had: (1) utilized town funds to purchase tires for his personal use; (2) misrepresented to a vendor that a storage shed was being purchased for the police department when it was being purchased for his personal use; (4) accepted the gift of a CD player for his police car; (7) ordered and obtained a handgun for a private individual; and (8) ordered and purchased a machine gun for a private individual.

The board found, as charged, that establishment of these acts constituted a just cause for dismissal because each act constituted "knowing and intentional dishonesty." In addition, some of the acts charged were found, also as charged, to have violated the police department's rules and policies, the town's purchasing rules and policies, and various state statutes.

employment contract, by presuming the applicability of town purchasing rules and regulations and by precluding full participation by one of the board members; and (3) failed to adopt regulations pursuant to General Statutes § 7-276 in advance of the plaintiff's adjudicatory hearing. We agree with the trial court's disposition of these issues.

I

As background for our consideration of the specific issues raised by the plaintiff, we must restate briefly the nature of the plaintiff's interest in his position. "[T]he plaintiff has a property interest in his position as chief of police that is protected by the due process clause of the fourteenth amendment to the United States constitution; see *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 538–39, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Bartlett* v. *Krause,* 209 Conn. 352, 366–67, 551 A.2d 710 (1988); *Lee* v. *Board of Education,* 181 Conn. 69, 71–73, 434 A.2d 333 (1980); and by article first, § 8 of the Connecticut constitution. See *Lee* v. *Board of Education,* supra, 71–72 ('[a]rticle one, section eight of our state constitution . . . given the same effect as the fourteenth amendment to the federal constitution'); see also *Rado* v. *Board of Education,* 216 Conn. 541, 555, 583 A.2d 102 (1990); *Petrowski* v. *Norwich Free Academy,* 199 Conn. 231, 234, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986)." *Clisham* v. *Board of Police Commissioners,* 223 Conn. 354, 360–61, 613 A.2d 254 (1992). Thus, in accordance with § 7-278, the plaintiff can be removed from office only upon "a showing of just cause by the authority having the power of dismissal . . . ."

Section 7-278 does not prescribe the manner in which a board must conduct the public hearing that is required to determine whether there is just cause to dismiss the

"active head of any police department." In this case, the plaintiff was concededly afforded significant procedural rights to participate in the quasi-judicial evidentiary hearing that led to his dismissal. He does not contest that he was: given adequate written notice of the charges against him; provided with copies of all investigative reports in advance of the hearing; represented by counsel; permitted to cross-examine each witness; able to present evidence on his own behalf; permitted to present a closing argument; permitted to challenge the legal advice given to the board; able to review the proceedings, which were recorded by transcription; and afforded timely written notice of the board's findings.[3]

## II

The plaintiff claims that the board violated his constitutional rights because members of the board had a dual role that encompassed both investigation and adjudication. The record demonstrates that, having received complaints about the plaintiff's conduct, the board undertook a preliminary investigation to determine whether formal charges should be pursued against him. Although this course of conduct was consistent with the requirements of § 7-278, the plaintiff maintains that, in the circumstances of his case, the board's preadjudicatory involvement created so significant a risk of bias as to deprive him of his due process right to an impartial tribunal. We disagree.

The merits of the plaintiff's claim can best be assessed by stating first what he does not claim. He recognizes that, as a general matter, professional disciplinary proceedings may combine investigatory and adjudicatory functions without violating due process. See, e.g., *Withrow* v. *Larkin,* 421 U.S. 35, 47–55, 95 S. Ct. 1456,

---

[3] We need not decide whether this panoply of procedural safeguards exceeded the plaintiff's constitutional entitlement.

43 L. Ed. 2d 712 (1975); *In re Zoarski,* 227 Conn. 784, 797, 632 A.2d 1114 (1993). Furthermore, in light of the record in this case, he does not challenge the finding of the trial court that he has failed to establish actual bias or prejudgment on the part of the board. See *Rado* v. *Board of Education,* supra, 216 Conn. 556.

The plaintiff's claim devolves, therefore, into an assertion that special facts and circumstances created a constitutionally intolerable risk of unfairness in his case. He points to the following events. Upon receipt of a complaint of improprieties on the part of the plaintiff, two members of the board themselves commenced an inquiry by interrogating the plaintiff. Notes of that interrogation became an exhibit at the adjudicatory hearing. The board thereafter hired outside investigators to conduct a further inquiry. The board itself, on subsequent occasions, conducted a further interrogation of the plaintiff and heard evidence from witnesses who had been subpoenaed to attend and had been granted immunity. The board authorized its attorneys to draft formal charges seeking the plaintiff's dismissal and to bring the plaintiff's activities to the attention of the office of the state's attorney. Finally, the board hired counsel to prosecute the charges against the plaintiff during the adjudicatory proceedings.

We are unpersuaded that these preadjudicatory activities, even if viewed with the most zealous concern for due process, show that the board could not conscientiously and fairly consider the serious charges against the plaintiff. "A presumption of impartiality attends administrative determinations, and the burden of establishing a disqualifying interest on the part of an adjudicator rests upon the one seeking disqualification." *Rado* v. *Board of Education,* supra, 216 Conn. 556. Unlike the case of *Clisham* v. *Board of Police Commissioners,* supra, 223 Conn. 370–74, the board members who initiated the inquiry into the plaintiff's official

conduct were the former chairman and vice-chairman, neither of whom participated in the adjudicatory hearing of the charges against the plaintiff. Neither these former members nor the members who actually adjudicated the charges were alleged to have had any personal animosity toward the plaintiff. The board's decisions to hire independent investigators and independent counsel, and to hold a preliminary hearing to receive testimony from informed witnesses, demonstrate a commendable effort to avoid convening a formal dismissal hearing until a basis for doing so had been established. Compare *Adriani* v. *Commission on Human Rights & Opportunities*, 220 Conn. 307, 319, 596 A.2d 426 (1991). The plaintiff has, therefore, failed to establish any prejudice in the conjunction of investigatory and adjudicative activities in his case.

## III

The plaintiff claims that the board's adjudication of the merits of the charges against him was prejudicially tainted by improper advice that the board received from its designated counsel, attorney Michael Williams, whom the board charged with the responsibility of instructing the board on the applicable law. The plaintiff maintains that Williams misled the board with respect to: (1) the plaintiff's burden of proof; (2) the effect of an employment contract between the plaintiff and the board; (3) the applicability of town purchasing rules and regulations; and (4) the extent to which board member Donald Scharf could participate in the proceedings. We disagree.

## A

Because § 7-278 does not define the burden of proof that should govern the dismissal of a police chief, the board turned to Williams for instructions on the applicable law. In this capacity, Williams informed the board that the plaintiff was presumed to be innocent of each

charge. Williams further instructed the board that "if a piece of credible evidence offered is equally capable of two reasonable constructions, one of which is consistent with innocence, it must be given that construction." In addition, he told the board that the applicable burden of persuasion was clear and convincing evidence. In this appeal, the plaintiff takes no issue with these instructions.[4] He maintains, however, that Williams misled the board by stating that the plaintiff would bear the burden of proving anything that he asserted by way of explanation or defense.[5] The issue before us is whether this advice so tainted the board's proceedings that the plaintiff's dismissal must be set aside.

The trial court concluded, and we agree, that the board was not misled by the advice it received from Williams. Read in context, the advice did not shift the burden of proof to the plaintiff. Even if it had done so, the record of the board's proceedings demonstrates that the board found that each charge had been proven by clear and convincing evidence. Its open deliberations, which are a matter of record, belie the plaintiff's claim that his dismissal resulted from a misallocation of the burden of proof. The trial court aptly noted that "neither in oral argument nor [in] his brief has [the

---

[4] We need not decide whether, in accepting these instructions, the board exceeded the requirements of General Statutes § 7-278 or the constitutional mandates of due process. See *Bartlett* v. *Krause,* supra, 209 Conn. 380–81; see also *Cleveland Board of Education* v. *Loudermill,* supra, 470 U.S. 539–45.

[5] Williams initially informed the board that the plaintiff's attorney, on behalf of the plaintiff, had "the obligation of proving any defense, explanation or fact which he [the plaintiff] may assert as to [the charges against him]." The plaintiff's attorney objected, claiming that the plaintiff bore no burden whatsoever because he had presented no affirmative defenses to any of the charges. Williams then clarified his advice to the board by stating that the plaintiff had no burden to say anything, but that to the extent that the plaintiff had "asserted for example a defense or an explanation, [he would] have an obligation to prove that."

plaintiff] referred to anything in the voluminous record which could even arguably support a claim that the Board was misled by the instructions or improperly shifted the burden of proof to him." We reject the plaintiff's contention that this evidentiary lacuna can be filled by unsupported speculation about the board's mental processes. In the absence of a showing of substantial prejudice, the plaintiff has not demonstrated that the board's decision should be reversed. See *Tomlinson* v. *Board of Education,* 226 Conn. 704, 712–13, 629 A.2d 333 (1993); *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 261–63, 579 A.2d 505 (1990); *Board of Education* v. *State Employees Retirement Commission,* 210 Conn. 531, 540, 556 A.2d 572 (1989).

B

The plaintiff also claims that the board's decision to dismiss him from his position was premised on three other alleged misstatements of the applicable law by Williams. The board was advised that the employment contract between the plaintiff and the board did not establish the sole and exclusive grounds on which dismissal for just cause might be premised. The board was also advised that the plaintiff was bound to follow town purchasing procedures, even though there was testimony that the applicable procedures were those of the police department itself. Finally, the board was advised that commissioner Donald Scharf, who found in the plaintiff's favor on many of the formal charges, should refrain from voting on whether these charges constituted just cause for the plaintiff's dismissal.

The plaintiff characterizes Williams' advisory opinions, which were not a part of his formal instructions to the board, as usurping the fact-finding role of the board. Taken literally, this claim cannot succeed because the advice related to questions of law rather than to findings of fact.

Even if Williams' advice is properly characterized, however, as raising questions of law, the plaintiff's claims are unpersuasive. The board made its own determinations, on the record, on each of the matters to which the plaintiff adverts. The plaintiff has not argued that, as a matter of law, the charges on which his dismissal was based fell outside the terms of just cause contained in his employment contract. He cannot demonstrate that the findings of just cause were, in even one instance, based solely on a finding that he had violated town purchasing rules. Finally, Scharf participated fully in all of the discussions and in the ultimate vote on the plaintiff's dismissal.

As did the trial court, we conclude that the plaintiff has failed to demonstrate that the adjudicatory hearing was tainted by illegality or unconstitutionality. It is not our function to substitute our judgment for that of the board. *Tomlinson* v. *Board of Education,* supra, 226 Conn. 713–14; *Rado* v. *Board of Education,* supra, 216 Conn. 555. Even a demonstration of procedural irregularities would not require us to set aside the board's decision in the absence of a showing of material prejudice. *Jutkowitz* v. *Dept. of Health Services,* 220 Conn. 86, 97, 596 A.2d 374 (1991); *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 205, 491 A.2d 1058 (1985). The plaintiff has pointed to no evidence of such material prejudice in the record of this case.

IV

The plaintiff finally claims that he was deprived of his due process right to fair notice of the rules by which he would be tried on the charges against him because, at the time of his adjudicatory hearing, the board had not yet adopted regulations pursuant to General Statutes § 7-276.[6] Section 7-276 authorizes boards of police

---

[6] General Statutes § 7-276 provides: "POWERS OF COMMISSIONERS. Such boards shall have all of the powers given by the general statutes to boards

commissioners to "make all needful regulations for the government thereof not contrary to law" and confers upon each board "the sole power of appointment, promotion and removal of the officers and members of such police department, under such regulations as it adopts for the purpose . . . ." The plaintiff maintains that, in the absence of such regulations, he was prejudiced by his lack of forewarning about the standard of proof that the board would apply in determining whether he should be dismissed.

In *In re Zoarski,* supra, 227 Conn. 795–96, we considered the consequences of an adjudicatory board's failure to enact the regulations contemplated by the governing statute. We held that a litigant seeking to challenge the absence of such procedural rules and regulations must make "a showing that some personal prejudice has resulted from the [board's] failure to act. See *Goldberg* v. *Insurance Department,* 207 Conn. 77, 83–84, 540 A.2d 365 (1988), and cases cited therein; see also *Eagle Hill Corporation* v. *Commission on Hospitals & Health Care,* 2 Conn. App. 68, 78, 477 A.2d 660 (1984)." Id., 795. We indicated that the requisite prejudice might be found if the plaintiff had failed to receive fair notice of the charges against him or had been deprived of a meaningful opportunity to defend

of police commissioners, shall have general management and supervision of the police department of such town and of the property and equipment used in connection therewith, shall make all needful regulations for the government thereof not contrary to law and may prescribe suitable penalties for the violation of any such regulation, including suspension or removal from office of any officer or member of such police department. Such board shall have the sole power of appointment, promotion and removal of the officers and members of such police department, under such regulations as it adopts for the purpose, and such appointees shall hold office during good behavior and until removed for cause upon written charges and after hearing. The members of such police department shall have all such authority with respect to the service of criminal process and the enforcement of the criminal laws as is vested by the general statutes in police officers and constables."

himself against these charges. Id. As in *Zoarski,* such procedural safeguards were afforded to this plaintiff. We are not persuaded that the lack of advance knowledge that the board would require the charges to be proven by clear and convincing evidence prejudiced the plaintiff's capacity to respond effectively to the charges against him. Indeed, it is far from certain either that such a high standard was constitutionally required or that its articulation would have been necessary if regulations had been duly promulgated.

Even without a specific showing of prejudice, the plaintiff urges us to hold that due process requires the enactment of regulations to govern the proceedings of any board that lacks the special expertise of administrative agencies such as the judicial review council. Although we have considered the role of experts on administrative agencies in conjunction with administrative fact-finding; see, e.g., *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 525, 560 A.2d 403 (1989); we have not held that the composition of the board plays a significant role with regard to the requirements of procedural due process. We are not persuaded that the claim raised by the plaintiff in this case warrants such a distinction.

In conclusion, we agree with the trial court's well reasoned opinion that the plaintiff has established no grounds for setting aside his dismissal as police chief. The proceedings before the board did not violate the plaintiff's statutory and constitutional rights.

The judgment is affirmed.

In this opinion the other justices concurred.